(24 App. Div. 551.)

FIRST NAT. BANK OF AMSTERDAM v. MILLER et al. (two cases).

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

1. WILLS—DEVISE IN TRUST—VALIDITY.
    A testatrix bequeathed certain sums of money to her brother, to be used as he deemed proper, to support himself and "family" during his life, and on his death the residue was to be given to his children. At the time of testatrix's death, her brother had two children. *Held*, that the trust is not void for uncertainty as to its beneficiaries, and that both the trust and the bequest to the children are valid.

2. FRAUDULENT CONVEYANCE—INTEREST IN TRUST FUND.
    Under Code Civ. Proc. § 1879, a trustee of a fund for the support of himself and family during life, and at his death the residue to go to his children, has no personal interest in the fund which his creditors can reach, and his assignment thereof to his children cannot be questioned by them.

3. TRUST—CONSTRUCTION—TITLE OF BENEFICIARY.
    Where a fund is given to a person during his life for the sole purpose of supporting himself and family, there is no such "absolute power of disposition" as converts the estate into a fee, under Real Property Law, § 129, substituted for 1 Rev. St. p. 732, § 81.

    Putnam, J., dissenting.

Appeal from special term.

Actions by the First National Bank of Amsterdam against John C. Miller and others to set aside transfers of property as fraudulent and void. From a judgment for plaintiff in both actions, defendants appeal. Reversed.

On June 22, 1896, the defendant John C. Miller, being the owner of bank stock of the value of $860, a horse, carriage, and other chattels of the value of $700, and real estate of the value of $45,000, disposed of the same as follows: The stock he transferred to his two daughters, defendants in the first above entitled action, without any consideration. The other personal property he sold to his daughter Esther Miller, the defendant in the second above entitled action, by a bill of sale, the alleged consideration being a claim against her father for services. The real estate was conveyed to the said Esther Miller for the alleged consideration of $38,017.40. Such sum was made up as follows: Mortgages outstanding against the property, which the grantee assumed to pay, $22,568.33; notes against Miller, which she held or assumed and agreed to pay, $9,465.93; and $5,982.17 thereof was a sum which Miller had received from his sister's estate, and which he testified he had put into the property as a permanent investment for the benefit of his daughters. The $860 of stock which is the subject of the first suit, and the $5,982.17 invested as above, were received by Miller from his sister's estate, and were held by him pursuant to the provisions of her will, which reads as follows: "Now, therefore, I do by this writing, which I hereby declare to be a codicil to my said last will and testament, and to be taken as a part thereof, order and declare that my will is, in case my brother John C. Miller shall survive me, that there shall be paid to him the amount or sum as mentioned and provided for him in the 17th and 20th sections or clauses of my said last will, but that same shall be paid to and received by him in trust only to be used by him as he may deem proper and necessary for the support and maintenance of himself and family during his natural life, and same I hereby declare and provide not to be liable nor in any way to be charged with any debt or claim now existing against said John C. Miller, or for any debt that may be created or incurred by him hereafter; and, upon the decease of my said brother John C. Miller, the balance of said moneys received by him in trust which may remain unexpended by him I give and bequeath absolutely to his children, or to the survivors or survivor of them then living." These several transfers were made at the same time, and thereby the defendant Miller devested himself of all his property, being then

indebted to the plaintiff more than $9,000, and also owing other creditors. Upon the execution of such transfers, he became insolvent. The actions were brought to set aside such transfers as fraudulent and void, and to have the property applied to the satisfaction of the plaintiff's debt. Both were tried together; and upon the trial the transfers were treated as one transaction, and the trial court adjudged them to be fraudulent and void, and in each action directed the property so transferred to be sold by a receiver and the proceeds applied to the discharge of the plaintiff's debt. From such judgment the defendants in each case appeal to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

George B. White (H. V. Borst, of counsel), for appellants.
Nisbet & Hanson, for respondent.

PARKER, P. J. The first question to be determined in this case is whether the legacy given to the defendant Miller by the will of his sister is liable to be appropriated by his creditors to the payment of his debts. The plaintiff's counsel claims that the trust which was evidently attempted to be created by such will is void, because no beneficiary is named therein, except Miller himself, and that, because such trust is void, Miller took an absolute estate in the whole fund, by reason of the provisions of section 129 of the real property law, substituted for section 81, p. 732, 1 Rev. St. The cases have been decided upon this theory, and the judgments appealed from have seized upon the whole of such legacy, and applied it to the payment of Miller's debts. The plaintiff argues that the word "family" is so indefinite that it designates no one, and that hence Miller himself is the trustee and sole beneficiary named. But such word has been frequently used in wills, and the instances are many where gifts by way of bequest or devise to the "family" have been recognized and enforced. Generally, it derives its particular signification from the context of the will.

In Spencer v. Spencer, 11 Paige, 160, the chancellor says:

"The word 'family' may mean children, wife and children, blood relatives, or the members of the domestic circle, according to the connection in which the word is used."

In 2 Redf. Wills, p. 394, the rule is given as follows:

"It would seem that a gift to the family, either of the testator himself or of any other person, will not be held to be void for uncertainty, unless there is something special creating that uncertainty. The subject-matter and the context of the will are to be taken into account, and the bequest upheld, if it can fairly be made out what the testator intended by the word 'family.'"

It is there further said:

"It has often been held that a bequest to one and his family, he having children at that time, was intended for such person and his children; and that such children as were living at the decease of the testator were entitled to take."

It has also been held that:

"A bequest to one's wife 'towards the support of her family' gave the children such an interest in the estate devised as entitled them to maintain a bill in their own names to protect such interest." Woods v. Woods, 1 Mylne & C. 401.

See, also, Beales v. Crisford, 13 Sim. 592. See, also, Schouler, Wills, § 537; 2 Williams, Ex'rs, §§ 404, 989; Bates v. Dewson, 128 Mass. 334; 7 Am. & Eng. Enc. Law, p. 807.

In the case before us, at the time of the testatrix's death, Miller's wife was dead, and the two defendants Esther and Louise were his only children. Within the authorities above cited, there is no difficulty in determining that such children were the persons intended by the word "family" in the bequest above quoted. They, as well as Miller, were beneficiaries in the trust thereby created; and hence the trust does not fail for the reason assigned by the plaintiff's counsel. Woodward v. James, 115 N. Y. 346, 357, 22 N. E. 150. See, also, Losey v. Stanley, 147 N. Y. 568, 42 N. E. 8. We must conclude, then, that Miller held all the property he received under the will, in trust, to use the same for the support of himself and his two daughters, during his life, and upon his death whatever there should remain thereof unexpended is given over to the daughters or to the survivor of them. Such a trust, and the bequest over to the daughters, were valid. Roosevelt v. Roosevelt, 6 Hun, 31, affirmed 64 N. Y. 651. And inasmuch as Miller had no interest personally in the fund, or in the income therefrom, except for his support, he had no interest which his creditors could reach (Code Civ. Proc. § 1879; Bramhall v. Ferris, 14 N. Y. 41); and his assignment thereof to his daughters cannot be questioned by them.

But, even if Miller did not receive the fund in trust, it is clear that section 129 of the real property law does not apply. Under the provisions of that section, the estate is turned into a fee only "where an absolute power of disposition," not accompanied by any trust, is given. Even if no trust is created, no "absolute power of disposition" is given to Miller. He had the right to use it for one purpose only, viz. the support of himself and family. The case of Rose v. Hatch, 125 N. Y. 427–433, 26 N. E. 467, is very similar in its facts, and entirely analogous in principle. Under the authority of that case, Miller's creditors could not reach any part of the fund bequeathed to him.

Applying this conclusion to the two cases before us, we find the situation to be as follows: The $860 of bank stock which is the only subject-matter of the first action was received by Miller "in specie," under the provisions of such will. He had up to the date of the transfer used only the income therefrom. The principal he had kept intact, and, if he had then died, his daughters, and not his creditors, would have been entitled to the whole of it. By such transfer, Miller determines that he will never need any of it for his support, and passes the control of the whole over to his daughters. So far as his right to expend any part of it is concerned, I can see no reason why, as against his creditors, he may not abandon it to those who are ultimately to take such as he does not use. Such right on his part is not a right that his creditors could seize or utilize, and hence they can no more complain if he gives up to his daughters his right to expend it than they could if he should die without having done so. It is not anything that they can use, and hence they can have no right to claim any part of it. So far, then, as that action is concerned, the plaintiff had no right to reach the property affected by it, and the judgment should therefore be reversed, and the complaint dismissed, with costs.

In the second action, it appears that Miller used $5,982.17 of the fund he derived under such bequest in erecting the building upon the premises which he conveyed to his daughter Esther. The judgment in that action sets that conveyance aside as fraudulent, and directs the receiver to sell the property, and apply the proceeds to the satisfaction of the plaintiff's debt, thereby taking such item of $5,982.17 from the daughters, and appropriating it entirely to the benefit of Miller and his creditors. Miller himself could not, by so using the fund, deprive his daughters of their interest in it. It was not an appropriation of the principal to his support, but was rather a method of investing it and keeping it intact; and, had it remained in that condition until his death, I see no reason why his daughters would not have had an equity in the premises to that extent, superior to any of his creditors. For the reasons above stated, it was property to which the creditors could not resort; and hence as against Miller's children, or either of them, the plaintiff is not entitled to have it sold in this action. For that reason alone, the judgment must be reversed, and a new trial granted.

These considerations lead to the following conclusions: In action No. 1 the judgment is reversed, and the complaint dismissed, with costs. In action No. 2 the judgment is reversed, and a new trial granted, costs to abide the event. All concur except PUTNAM, J., dissenting.